IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVID EARLS, ) | |
| AIS # 147103, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIV. ACTION NO. 2:05cv826-WKW |
| ) | (WO) |
| R.N. ROBINSON, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, David Earls ("Earls") claims that his civil rights were violated during his incarceration in Bullock County Correctional Facility. Specifically, Earls contends that Nurses Dale Robinson ("Robinson"), Patricia Robbins ("Robbins"), and Wilma Nalls ("Nalls") acted with deliberate indifference to his health by delaying or failing to provide him adequate medical treatment.

The defendants filed a written report and supporting evidentiary materials addressing Earls' claims for relief.[1] The court deems it appropriate to treat these responsive pleadings as a motion for summary judgment. Upon consideration of such motion, the evidentiary

---

[1] On November 21, 2005, the defendants also filed a supplemental special report, in which they argued that the plaintiff's claims are barred by the doctrine of res judicata. Specifically, the defendants assert that the plaintiff raised similar claims against medical defendants in a state court case. The evidentiary materials indicate that the Montgomery County Circuit Court found that Earls failed to exhaust his remedies through the medical grievance system and "therefore is precluded from bringing this lawsuit until he has pursued that remedy." (Doc. No. 10, Def's Ex. D.) Consequently, the court concludes that the doctrine of res judicata does not bar Earls from raising medical claims against these defendants in federal court at this time. Nonetheless, the court concludes that the defendants' motion for summary judgment should be granted.

materials filed in support thereof, and the response in opposition filed by Earls, the court concludes that the defendants' motion for summary judgment should be granted.

## I.  STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, the plaintiff is required to produce some evidence supporting his constitutional claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  He must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324.  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).  Although factual inferences must be viewed in a light most favorable to the non-moving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro

se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## II.  FACTS

At some point in 2002 or 2003, Earls entered Bullock County Correctional Facility. In January 2004, Earls went to the infirmary with complaints of chest pain, and Dr. Tahir Siddiq referred Earls to a heart specialist. (*Id.*)  In March 2004, Dr. Carlos Garcia, a cardiologist, performed a heart catheterization on Earls. (*Id.*)  Dr. Garcia determined that Earls suffered from "noncritical coronary artery disease involving the right coronary artery and the left anterior descending coronary artery."[2]  (*Id.*)  After this procedure, Earls continued to receive treatment for his condition, including examinations by heart specialists, stress tests, and a prescription for Isordil.[3] (*Id.*)  On occasion, Earls was also prescribed nitroglycerin patches "which can make the pain go away or ease it considerably."  (*Id.*)

On January 9, 2005, Earls submitted a grievance form, complaining that nurses had failed to provide him Isordil during three pill calls.  (Doc. No. 9, Pl's Ex. B.)  Robinson responded that Earls' "medicine has been ordered.  Mrs. Slater did not refuse to give you your medicine.  She did not have it in stock to give you.  I am checking with the pharmacy

---

[2] Dr. Garcia noted that the right coronary artery "does have a 50% mid course lesion, otherwise is unremarkable" and that the left anterior descending artery "shows about a 30-40% plaque at the level of the origin of the first diagonal branch." (Doc. No. 6, Def's Ex. A.)

[3] Isosorbide or Isordil is a medication used to increase blood supply to the heart muscle and ro reduce the number of angina chest pain attacks. (Def's Ex. B.)

and you will be given your Isordil." (*Id.*)

Earls submitted a letter dated February 17, 2005, to Nalls, in which he complained that he was not provided Isordil during the afternoon pill calls on February 16 and 17.[4] (Doc. No. 9, Pl's Ex. C.) On February 22, 2005, Earls also submitted a sick call request, complaining that the nurses had refused to provide him Isordil. (Doc. No. 6, Def's Ex. A.) The following day, Nurse Gloria Rogler discussed the problem with Earls and referred him to the prison physician. (*Id.*) Dr. Siddiq renewed Earls' prescription for Isordil on February 23, 2005. (*Id.*) Earls, however, did not receive Isordil during the 11:00 a.m. or 5:00 p.m. pill calls on February 23, 2005 or during any pill calls between February 24 and February 28, 2005. (*Id.*)

On February 25, 2005, Earls presented to the infirmary. (*Id.*) A physician conducted an examination, specifically noting that "SOB[5] today [complains of] chest pain." (*Id.*) Earls was subsequently provided oxygen and nitroglycerin. (*Id.*) Medical records also indicate that a physician recommended that Earls remain overnight in the infirmary for observation, but that Earls refused to do so. (*Id.*) Earls agreed to return to the infirmary in order for medical personnel to perform electrocardiogram ("EKG") testing later that evening and during the following morning. (*Id.*)

On March 20, 2005, Earls submitted a letter to Nalls, asking whether he needed to

---

[4] The letter was subsequently returned to Earls with a notation indicating that the problems was "addressed 3/5/05 after late receival." (Doc. No. 9, Pl's Ex. C.)

[5] In medical terminology, the acronym "SOB" refers to "Shortness of Breath." *See* Medical Abbreviations at www.pharma-lexicon.com.

return to sick call in order to renew his prescription for Isordil.  (Doc. No. 9, Pl's Ex. D.)  Medical personnel returned the letter to Earls with a notation that the issue was "resolved."  (*Id.*)  Around 8:00 p.m. on March 25, 2005, Earls presented to the infirmary requesting nitroglycerin tablets. (Doc. No. 1, Attach. Facts in Support of Ground Two.)  Robbins refused to give him the medication.  (*Id.*)  During the 4:00 a.m. pill call, another nurse gave Earls a bottle of nitroglycerin tablets.  (*Id.*)  The following day, Dr. Siddiq ordered that Earls should receive nitroglycerin.  (Def's Ex. A.)

On August 1, 2005, a cardiologist assessed that Earls should receive an additional stress test and that, if the results were positive, he should undergo "another catheterization to see if his disease progressed."  (*Id.*)  On August 25, 2005, Earls filed this federal lawsuit against Robinson, Robbins, and Nalls.  (Doc. No. 1.)  Earls continued to receive medical treatment after the filing of his complaint. The results of an August 29, 2005 stress test were negative. (Def's Ex. A.)  In addition, a dual isotope imaging report indicated that Earls had "normal perfusion throughout the myocardium."  (*Id.*)  On September 8, 2005, Earls was provided an indefinite prescription of Nitrostat for the treatment of chest pain.  (*Id.*)

### III.  DISCUSSION

Earls asserts that the defendants acted with deliberate indifference to his health by failing to give him his medication in a timely manner.  Specifically, he contends that Robinson and Nalls failed to ensure that he received his Isordil prescription during several

pills calls in February 2005. Earls claims that the denial of this medication "could [have] cost him his life." (Doc. No. 1, Attach. Facts in Support of Ground One.) In addition, Earls asserts that Robbins refused to provide him a bottle of Nitroglycerin tablets during the evening of March 25, 2005. The defendants deny that they acted with deliberate indifference to Earls' health and assert that Earls was provided sufficient medical treatment during his incarceration in the Bullock County Correctional Facility.

To prevail in a suit based on an Eighth Amendment claim about medical attention, an inmate must show at a minimum that jail or medical officials have acted with deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). Because society does not expect that inmates will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000 (1992). A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A jail or medical official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994). Under this standard, a jail or medical official does

not act with indifference by providing medical care that is different from that which an inmate desires. *See Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985).

A claim about a failure to provide immediate or emergency medical attention must involve medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176 (11th Cir. 1994). In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation. *Id.*

> The "seriousness" of an inmate's medical needs also may be decided by reference to the effect of delay in treatment.... Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." ... An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir.1994) (emphasis added). Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Hill*, 40 F.3d at 1188-89.

Medical records indicate that, throughout his imprisonment in the Bullock County Correctional Facility, Earls received treatment from a heart specialist and was routinely

provided medication. (Defs' Ex. A.) Earls fails to demonstrate that the brief delay in receiving his Isordil and Nitroglycerin tablets caused his heart condition to worsen. Indeed, the last tests indicate that his disease has not progressed. Although Earls asserts that "after not receiving [his] medication for 4 days [he] had to be carried to the infirmary," the medical records demonstrate that he refused to remain in the infirmary for observation as recommended by medical personnel. (Doc. No. 9, p. 4, Pl's Ex. A; Doc. No. 6, Def's Ex. A.) Thus, it is apparent that Earls' medical need at that time was not life-threatening or otherwise serious. *See Hill*, *supra.* Earls has failed to show that the defendants in any way disregarded a substantial risk to his health by delaying or denying him adequate medical treatment for his heart condition. Consequently, the defendants' motion for summary judgment should be granted.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. This case be dismissed with prejudice.

3. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that the parties are DIRECTED to file any objections to the **on or before May 21, 2007**. Any objections filed must specifically identify the findings in the Magistrate

Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 7th day of May, 2007.

                                                /s/Charles S. Coody
                                        CHARLES S. COODY
                                        CHIEF UNITED STATES MAGISTRATE JUDGE